FILED
BILLINGS, MT

2006 APR 13 AM 9 27

PATRICK E. _____ CLERK

BY_____

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| GARY LEE STEWART, ) | Cause No. CV 05-43-BLG-RWA |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | FINDINGS AND RECOMMENDATION |
| ) | OF U.S. MAGISTRATE JUDGE |
| SHERIFF CASTLE; CAPTAIN ) | |
| O'FALLEN (ADMINISTRATOR), ) | |
| CASCADE COUNTY DETENTION ) | |
| FACILITY, ) | |
| ) | |
| Respondents. ) | |

Petitioner Gary Stewart filed this action on March 11, 2005. Although his allegations were extraordinarily difficult to understand, he appeared to allege that he was being held in custody beyond his release date. On that basis, the Court ordered Respondents (hereafter "the State") to file an Answer. The State did so on September 28, 2005. On November 22, 2005, pursuant to the Court's Order, the State re-served its Answer on Stewart at the address reflected in the Court's file. Stewart was given an opportunity to file a Reply to the Answer, but he did not do so.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

## I. Factual and Procedural Background

The following facts are based on the documents attached to the State's brief in support of its Answer (doc. 5).

On or about April 13, 2001, Stewart was arrested and charged with driving under the influence (Count 1), driving after having been adjudged a habitual traffic offender (Count 2), and operating a motor vehicle without proof of insurance (Count 3). Stewart was represented by Melissa Edwards. Ex. 1 at A-1 (Judgment). On July 31, 2001, he signed a document titled "Acknowledgement of Waiver of Rights by Plea of Guilty." *Id.* at A-18. That document states that the parties had reached a plea agreement and the State would recommend a sentence of "6 mos DOC + 4 yrs probation." The document also states that the agreement is "a 1C plea agreement," apparently referring to Mont. Code Ann. § 46-12-211(1)(c) (2001), which provides that the State may "make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that the recommendation or request may not be binding upon the court." The document also informed Stewart that he would not be entitled to withdraw his guilty plea if the Court rejected the plea agreement. *Id.* Stewart entered a guilty plea to Counts 1 and 2 on August 1, 2001.[1] Ex. 1 at A-1.

On Count 1, Stewart was sentenced to serve six months in the

---

[1] Count 3 was dismissed at sentencing.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

custody of the Department of Corrections, to be followed by four years' probation.  Ex. 1 at A-2.  On Count 2, he was sentenced to one year's imprisonment, all suspended, to run concurrently with his sentence on Count 1.  *Id.*  Based on the pre-sentence report, which was prepared with the understanding that sentencing would occur on October 4, Stewart was given credit for time served between April 13 and October 4, 2001, of 168 days.  *Id.*; Ex. 1 at 8-9.  Stewart did not appeal.

Two petitions to revoke Stewart's probationary sentences were filed, one on January 3, 2002, alleging that Stewart consumed alcohol on or about December 19, 2001, and another in February, 2002, alleging several instances of failure to report to a probation officer.  On Stewart admitted all violations charged in both petitions.  Ex. 1 at 2-3.  On March 14, 2002, at a dispositional hearing, Stewart's probationary sentences were revoked and he was sentenced to the custody of the Department of Corrections for a period of three years.  He was given credit against that sentence for the time he served in jail between April 13 and September 27, 2001; between December 19 and 24, 2001; between February 15 and March 14, 2002; and for any time spent in inpatient treatment, pre-release, or other facilities.  He was not given "street time" credit for the period of time between his sentencing and his arrest on December 19, 2001.  *Id.* at A-9 to A-10.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

On March 23 and April 10, 2002, Stewart wrote to the presiding judge, generally asserting that he wished to appeal, that he did not fail to report to his probation officer and the log books of the probation office would show that he reported as required, and that he believed he should not be in jail.  Ex. 1 at A-22 to A-25, A-30 to A-32.

New counsel, Gary Wilcox, was appointed to represent Stewart on appeal from the revocation.  Counsel filed an *Anders* brief, raising the issues, among others, of whether the revocation was invalid on the grounds that Stewart spent more than six months in custody between the date of his arrest and the date of his release after sentencing and whether the State violated the plea agreement. Ex. 1 at iv.  Stewart claimed that he was not released after his original sentencing until October 16, 2001; counsel noted that the Order Revoking Stewart's suspended sentences gave him credit for time served between April 13 and September 27, 2001, suggesting that Stewart was released from jail on September 27, 2001.  *See* Ex. 1 at 2 & n.2, 8, A-10.  On November 7, 2002, the Montana Supreme Court held that "an appeal in this case would be wholly frivolous," granted counsel's motion to withdraw, and dismissed the appeal. Ex. 2.

On December 30, 2004, Stewart filed a petition for writ of habeas corpus in the Montana Supreme Court.  *See* Ex. 3, *passim*. That petition appears to be identical to the one he filed in this

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

Court.   On February 2, 2005, the Montana Supreme Court denied
Stewart's petition on the grounds that Stewart's issues were the
same as those raised on direct appeal and the writ of habeas corpus
was not available, under state law, to raise issues that were or
could have been raised on appeal.   Ex. 6 at 1-2; *see also* Mont.
Code Ann. § 46-22-101(2) (2003).

On February 7, 2005, Stewart was discharged from all custody
based on his initial conviction and revocation of his suspended
sentences.   Ex. 7 at 1.

On March 11, 2005, Stewart filed his petition in this Court,
though he apparently signed the Certificate of Service on February
25, 2005.[2]

## II. Stewart's Allegations

Although Stewart's allegations remain unclear, the Court
believes that he alleges that the State breached the plea
agreement, that the revocation of his suspended sentences was
invalid, and that his sentence was erroneously calculated.   *See*
*generally* Pet. at 5-7.

---

[2]   The State generously supposes that he signed the petition
in December 2005, probably meaning December 2004.   However, the
word "December" is struck through and the last digit of 2004 is
overwritten with a 5.   *See* Pet. at 8.   That part of the petition
suggests, at most, a work in progress.   The clearest date on the
petition is the one listed on the Certificate of Service, following
page 11 of the Petition.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

## IV. Analysis

Stewart's petition is probably time-barred.  More than one year and ninety days passed between November 7, 2002, when the Montana Supreme Court dismissed Stewart's appeal, and December 30, 2004, when he filed a petition for writ of habeas corpus in the Montana Supreme Court. However, Stewart would have to be given an opportunity to respond on that issue, and an evidentiary hearing might be necessary.  It is more efficient to address the petition directly.

### A. Jurisdiction

Respondents argue that the Court lacks jurisdiction because Stewart is no longer in custody and was not in custody at the time he filed his habeas petition in this Court.

It is possible to construe the petition as alleging that the original conviction is invalid.  He claims that the plea agreement was breached.  *See, e.g.*, Pet. at 5 ("1C Plea Agreement violated, a contract Due Process violated presentence investigation, A tail-end around a plea agreement."); *id.* at 6 ("sentence differs from that agreed").  If he is correct about that, then his guilty plea and conviction are infirm.[3]  Adverse collateral consequences are

---

[3]   "'[T]he only remedies available for breach of a plea agreement are enforcement of the agreement or affording the defendant an opportunity to withdraw the plea.'" *Sanders v. United States*, 252 F.3d 1329, 1335 (D.C. Cir. 2001) (quoting *1-95-CV-553-P1 v. 1-95-CV-553-D1*, 75 F.3d 135, 136 (2d Cir. 1996)).

presumed to flow from a conviction, even after a sentence has been completed.  "Custody" continues as to a conviction virtually at all times while the conviction remains a matter of record.  *See, e.g.,* *Sibron v. New York*, 392 U.S. 40, 55-57 (1968) (noting that the Court has "abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed").  Construing Stewart's petition liberally, the Court has jurisdiction over Stewart's claims relating to his conviction.

However, the Court lacks jurisdiction as to Stewart's claims that he spent too much time in custody and that the revocation of his suspended sentences was invalid.  Stewart was not "in custody" on the revocation when he filed his petition.  Once Stewart served the full term of his suspended sentences and was discharged, the revocation, in effect, no longer existed.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (noting that 28 U.S.C. § 2254 requires that a petitioner be "in custody" at the time he files a petition); *id.* at 8 ("The reincarceration that he incurred as a result of that action is now over, and cannot be undone.").  The revocation entails no continuing collateral consequences of its own; the presumed collateral consequences arise from the conviction, not the revocation.  The possibility that Stewart will not receive parole or probation for a future criminal offense is too attenuated to be comparable to the civil disabilities that give rise to jurisdiction where a conviction is challenged.  *See, e.g.,* *Lane v. Williams*, 455

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

U.S. 624, 632-33 & n.13 (1982).   Consequently, the Court lacks jurisdiction to entertain any claims as to the revocation.

**B. Validity of the Conviction**

The only ground on which Stewart challenges his conviction is his allegation that the State breached the plea agreement. Plainly, it did not.   All the State undertook to do was to recommend a sentence of six months in the custody of the Department of Corrections and four years' probation.   *See* Mont. Code Ann. § 46-12-211(1)(c) (2001); Ex. 1 at A-18.   That is exactly the sentence Stewart received.   An erroneous calculation of the time he spent in custody – even if there were any evidence of such an error – could only have arisen after the prosecution fully performed its obligations under the agreement by recommending the sentence that Stewart ultimately received.   There was no breach.

**V. Certificate of Appealability**

**A. Applicable Standards**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *See Hohn v. United States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000).   The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.   *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. §

2253(c)(3)).

> [I]n order to make a substantial showing of the denial of
> a federal right a petitioner . . . "must demonstrate that
> the issues are debatable among jurists of reason; that a
> court could resolve the issues [in a different manner];
> or that the questions are 'adequate to deserve
> encouragement to proceed further.'"

*Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits. The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit. *Lambright*, 220 F.3d at 1025. Any doubt as to whether a petitioner has met the standard is resolved in his favor. *Id.*

Finally, the COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue." Fed. R. App. P. 22(b)(1) (emphasis added). The Court need not explain why a COA *should* issue. *Id.*

### B. Analysis

Stewart's petition challenges his conviction on the argument that the prosecution breached the plea agreement. Because the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

prosecution fully performed its part of the bargain when it recommended a particular sentence – the very sentence that Stewart ultimately received – there was no breach.  Because Stewart fully discharged his sentence on February 7, 2005, the Court lacks jurisdiction to entertain any claims relating to the revocation of his suspended sentences.  No reasonable jurist would disagree with these conclusions.  Stewart's petition is frivolous.

**RECOMMENDATION**

Based on the foregoing, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), **RECOMMENDS** that Stewart's claims against his conviction should be DENIED on the merits and his claims against his revocation should be DISMISSED for lack of jurisdiction.  A certificate of appealability should be DENIED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Petitioner.  Petitioner is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Stewart must immediately inform the Court and counsel for the Respondents of any change in his mailing address.  Failure to do so may result in dismissal of this action without notice to Stewart.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

DATED this ___13th___ day of April, 2006.

Richard W. Anderson
United States Magistrate Judge